**TITLE INSURANCE AND TRUST COMPANY, Executor of the Estate of Ludwig G. B. Erb, Deceased, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 64–1331.

United States District Court
S. D. California,
Central Division.

Nov. 8, 1965.

In general the Trust provided that income from the corpus was to be distributed to the Trustor during his lifetime and upon his death (in the event his wife, Emma Erb, survived him) to Emma Erb during her lifetime; upon the death of Trustor and Emma Erb, after certain distributions of corpus the income from the remaining corpus should be distributed to certain named individuals; and, upon their death, the Trust should terminate, and the corpus then remaining should be divided among six charitable institutions, as follows:

Goodwill Industries of Southern California

Hathaway Home for Children

McKinley Home for Boys

Braille Institute of America, Inc.

Salvation Army of California

Pacific Home.

On January 4, 1955 Ludwig G. B. Erb amended the Declaration of Trust, and as amended Section Six of the Trust states the following:

"If at any time or times during the life of this trust, the Trustor—and after his death, the said Emma Erb, if she shall survive him—shall be in want of additional moneys for reasonable support, care and comfort, or for expenses of accident, illness or other misfortune, or for any purpose whatsoever, whether included in the foregoing classification or not; in such case of want or need it shall be the duty of the Trustee, in its sole uncontrolled discretion, to pay to or to use or to apply or to expend for the said Trustor or Emma Erb, his said wife, as the case may be, such portion or portions of the corpus of this trust estate, up to and including the whole thereof, as the Trustee may deem necessary to meet such want."

Ludwig G. B. Erb died on July 31, 1958, survived by Emma Erb, his widow. His Will, executed December 28, 1954 and admitted to probate, gave, devised and bequeathed the residue of his estate to Title Insurance and Trust Company

Bodkin, Breslin & Luddy, Los Angeles, Cal., for plaintiff.

Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Division, James S. Bay, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

WESTOVER, District Judge.

Ludwig G. B. Erb created an inter vivos trust by Declaration of Trust dated April 20, 1942, naming as Trustee the Title Insurance and Trust Company, which Trust is designated by Trustee as Trust No. P–10551.

to be held in said Trust No. P–10551 for the uses and purposes and upon the terms and conditions set forth in the Declaration of Trust above described, as amended.

On August 31, 1962 the widow, Emma Erb, died.

In probating the Will of Ludwig G. B. Erb plaintiff herein (Executor and Trustee) filed, on or about October 20, 1959, a Federal Estate Tax Return, showing a net taxable estate of $537,628.18 and a net estate tax payable of $144,964.73, and paid the tax shown to be due.

Thereafter an additional assessment of tax was levied, and the Executor satisfied the assessment on October 11, 1962 by payment of the sum of $4,246.27.

In the same month the Executor received a statutory notice of deficiency in Federal estate tax in the amount of $92,669.58, the claimed deduction of $297,562.71 for charitable bequests having been disallowed by the Internal Revenue Service. Plaintiff paid the deficiency assessment.

In November, 1963 plaintiff filed its claim for refund of estate tax paid, seeking to recover the sum of $81,742.54 "together with interest or such greater amount and interest as may be legally refundable" as overpayment of estate tax. The claim for refund was disallowed by the Commissioner of Internal Revenue, and plaintiff received notice of the disallowance in February, 1964. The within action was filed in September, 1964.

■ Defendant contends the words in Section Six of the Amended Trust Declaration

"* * * or for any purpose whatsoever, whether included in the foregoing classification [the classification of reasonable support, care and comfort, or for expenses of accident, illness or other misfortune] or not; * * *"

destroy the right to claim exemption from estate tax, and defendant cites as authority Ithaca Trust Co. v. United States,

279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; and Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259.

This Court agrees with defendant's contention that under the language of Section Six of the Amended Trust Declaration the tax was correctly assessed and collected.

■ Plaintiff takes the position that even though the language of Section Six above quoted may have destroyed the charitable bequest deduction, nevertheless, under decisions of the United States Court of Appeals for the Ninth Circuit plaintiff is still entitled to the charitable deduction on the theory that the likelihood there would ever be invasion of the Trust corpus was so remote that it did not seriously detract from the value of the charitable bequest.

Ludwig G. B. Erb was born November 3, 1875 and was sixty-six years old when he made the Declaration of Trust in 1942. He was seventy-nine years of age when the Trust was amended in 1955. He died on July 31, 1958 at the age of eighty-two years.

Emma Erb was born August 13, 1875; she was sixty-six years of age when the Declaration of Trust was made by her husband in 1942, and seventy-nine years old when the Trustor amended the Trust in 1955. She was eighty-two years old when her husband died.

At the date of the inter vivos Trust amendment and at the date of Ludwig G. B. Erb's death, Mrs. Erb had a substantial estate of her own. When she died in 1962 her gross estate totaled $920,350.76, which figure did not include any portion of her husband's estate. The record shows that, excluding any income from the Trust, Emma Erb's income in 1959 was $26,190.87, in 1960 it was $27,927.57, and in 1961 it was $31,-944.56. For the eight months of 1962 preceding her death the income was (to date of death) $36,080.95.

The Trust income for the years 1959 to August, 1962 (when Emma Erb died) was as follows:

| | |
|---|---|
| 1959 | $ 1,755.07 |
| 1960 | 32,338.95 |
| 1961 | 22,001.89 |
| 1962 (8 months) | 1,471.73 |

In the four-year interval between the death of Ludwig G. B. Erb and the death of Emma Erb there was no invasion of the Trust corpus for the benefit of Emma Erb.

As authority for its position plaintiff cites Commissioner of Internal Revenue v. Bank of America, 9 Cir., 133 F.2d 753, and Commissioner of Internal Revenue v. Wells Fargo, 9 Cir., 145 F.2d 130.

In Wells Fargo, supra, the income from the Trust corpus was to be paid to a niece for life and upon her death to various charitable organizations. The Trustees were empowered to apply such amounts as they deemed reasonable to assist the niece in case of her need

" 'on account of any sickness, accident, want or other emergency.' "

The Commissioner disallowed the claim for charitable exemption or deduction on the ground that the extent to which the Trustee could invade the corpus for the benefit of the life tenant was not fixed in fact or capable of being stated in definite terms in money. The Court said, at page 132:

"In the instant case there is substantial evidence to support the finding of the Tax Court concerning the remoteness of invasion of the trust corpus. The taxpayer has shown with sufficient certainty that the entire amount of the principal will be available for charitable purposes in accordance with the directions in the will by a showing of the beneficiary's advanced age, frugality over a long period of time, and independent means. * * * "

The niece at one time had been employed as a saleslady, receiving a maximum of $175.00 per month. She became the Trustor's companion at a salary of $45.00 per week, retaining the position until Trustor's death. At that time the niece was fifty-five years of age and possessed independent means of approximately $35,000.00. During the niece's lifetime, as beneficiary under the Trust, Trustees paid to her the sum of $300.00 per month out of the Trust income. With the income from her own securities and the income from the Trust the niece had more than sufficient funds for her ordinary needs. The Ninth Circuit Court said, at page 131:

"This court in the Bank of America case, supra, relied on the Ithaca Trust Co. case, supra. We refused to follow the rule propounded herein by the Commissioner, that the mere existence of the legal power to invade the corpus of a trust in favor of a private individual defeats the charitable gift deduction, but rather looked to the actualities of the situation, found sufficient certainty of the value of the charitable bequest in the improbability of an invasion of corpus, and concluded that the deduction was allowable. * * * "

And, continuing with its discussion of the Bank of America case, the Court said:

" * * * The sister's life expectancy was short; she lived simply and within her monthly allowance; she had independent means, and the net income of the trust was well in excess of her fixed annuity. * * *

" * * *

"In the instant case there is substantial evidence to support the finding of the Tax Court concerning the remoteness of invasion of the trust corpus. The taxpayer has shown with sufficient certainty that the entire amount of the principal will be available for charitable purposes in accordance with the directions in the will by a showing of the beneficiary's advanced age, frugality over a long period of time, and independent means. * * * "

This Court is, in the case at bar, of the opinion that plaintiff has shown with sufficient certainty Emma Erb's "advanced age, frugality over a long period of time, and independent means."

In Commissioner v. Bank of America, supra, (Ninth Circuit) the Trust provided for monthly payments to the Trustor's sister. The payments were $250.00 per month, together with additional sum or sums as in the judgment of the Trustee "may be necessary and reasonable under the existing conditions." The additional sums were to be paid "in case she should, by reason of accident, illness, or other unusual circumstances so require, * * *."

At the time of the Settlor's death the surviving sister was in her seventy-ninth year, her eyesight was greatly impaired, and her activities were greatly restricted. She owned in her own right a home, stocks and bonds, and savings accounts in excess of $26,000.00. Her income from these assets during 1937 was approximately $900.00. Her living expenses during the year for housekeeper, food, clothing and miscellaneous purposes was approximately $1450.00; consequently, her income from her personal estate, plus the monthly Trust payment, was more than sufficient to take care of all of her needs.

Speaking for the court, Judge Healy stated, 133 F.2d page 754:

" * * * The Commissioner argues that where, as here, the bequest is subject to an intervening life estate, the existence of the legal power to invade the corpus, or the mere possibility of invasion, is sufficient to defeat the deduction. The Board [of Tax Appeals], however, was of opinion that on the facts of the case the probability of the trustee's delving into corpus, or even into surplus income, was so inconsiderable as to render the value of the charitable bequests capable of definite ascertainment.

" * * * *

"The case before us exhibits no greater uncertainty. At the decedent's death the life expectancy of the sister was brief. Her mode of living and the restricted sphere of her activities were known. She had independent means, modest in amount, it is true, but substantial for one in her situation. Her living expenses were well within the monthly sum allowed her, even if her own resources be disregarded; and the fixed annuity in turn was so substantially less than the net income of the trust that an excess fund of almost $7,000 accumulated in the four years ending with 1940. Large sums were thus available to meet unusual circumstances such as illness or accident, so that the probability of an invasion of the corpus was remote indeed. Nothing was left to the sister's discretion; and the discretion of the trustee to meet the designated contingencies was confined to the expenditure of what was reasonably necessary.

"Naturally, cases arising under this statute present gradations of probability; and we do not wish to be understood as suggesting that charitable bequests in remainder are deductible where there is real likelihood of an undetermined part of the corpus being taken for the benefit of the life tenant. * * * On the other hand, a blind adherence to arbitrary standards must result in many instances in the needless frustration of the legislative policy."

In the cited case above, decided by a divided court, Judge Haney in his dissent stated, at page 755:

" * * * Under the regulation, the existence of the power to pay the sister in whole or in part the entire principal, is sufficient to defeat the deduction, regardless of the probability of exercise of that power."

In the Wells Fargo case, supra, invasion of corpus was permitted "on account of any sickness, accident, want or other emergency." Principal in the Bank of

America case could be used (over and above $250.00 per month) "in case she [Settlor's sister] should, by reason of accident, illness, or other unusual circumstances so require, such additional sum or sums as in the judgment of said trustee may be necessary and reasonable under the existing conditions."

But permission to invade corpus of the Trust at bar is of much greater latitude than expressed in either of the cited cases. The Trust now before the Court provides for invasion of principal for "reasonable support, care and comfort, or for expenses of accident, illness or other misfortune, or for any purpose whatsoever, *whether included in the foregoing classification or not*; * * *." Emphasis supplied.

Estate of James, 40 T.C. 494 (decided June 4, 1963) contains language strikingly similar to the parallel provision in the Trust at bar.

In the James case, supra, income from the Trust was payable to certain life beneficiaries, with power in the Trustee to invade principal during the lives of the beneficiaries.

"* * * either for comfortable maintenance and support, for educational requirements, illness, operations, *or for any reason whatsoever* which shall to my Trustees, in their sole discretion, seem sufficient." Emphasis supplied.

The Tax Court said, at page 498:

"* * * In determining the extent of the power of invasion, we are concerned with the element of possibility. The fact that invasion is not probable has no effect on whether or not a standard exists; it is the ascertainability of the ultimate charitable interest as of the date of the testator's death that determines the issue. * * *. * *, the standard for invasion must be capable of being interpreted in a monetary sense.

"* * * *

"In general, an ascertainable standard has been found when the language of the will allows invasion only to the extent necessary to sustain the beneficiary's customary mode of living. [Citations]. We have found no case which goes beyond this in finding a reasonable standard. See State Street Bank & Trust Co. v. United States, 313 F.2d 29 (C.A.1, 1963)."

The Tax Court held the James testamentary trust provided no ascertainable standard to determine the charitable bequest.

In the Erb Trust herein, the Commissioner's disallowance of the claim for refund was based upon language even more encompassing than that of the James trust, supra. The James trust permitted invasion of principal for certain needs of the beneficiaries *"or for any reason whatsoever."* The provision in the Trust at bar is much broader; it permits use of the Trust corpus for "reasonable support, care and comfort, or for expenses of accident, illness or other misfortune, *or for any purpose whatsoever, whether included in the foregoing classification or not."* Emphasis supplied.

The Erb Trust contains another provision which would seem to make doubtful a standard from which the charitable bequests could be determined. Section Four of the Trust instrument states:

"TO INVEST AND REINVEST all PRINCIPAL in such securities as then shall be legal for investment of trust funds and as the Trustee shall deem advisable:
"* * * *

"AND PROVIDED FURTHER, however, that upon the written direction of the Trustor during his lifetime, or after his death upon the written direction of the Trustor's said wife, if she survives him, the Trustee may invest principal in any securities or common stocks whether or not of a nature then legal for investment of trust funds as provided in said written direction. The Trustee shall be relieved of all liability for any investment made upon any such written direction, * * *."

During his lifetime and, after his death, the lifetime of the widow, the trust principal was at their disposal as above outlined; and the Trustee was to be exonerated for any investments made by either the Trustor or his widow in securities or stocks.

Under the language of Section Six of the Declaration of Trust, this Court is of the opinion the Commissioner correctly disallowed the claim for refund of estate taxes paid.

The provisions of the Erb Trust, and the amendment thereto, hereinbefore quoted, are so broad that a standard is not ascertainable to determine the charitable gifts, for no standard of invasion of the Trust principal was, at the date of death of Trustor, capable of being interpreted in a monetary sense.

Judgment is ordered for defendant. Findings of Fact, Conclusions of Law, and Judgment will be prepared in accordance with the rule, for presentation to the court for signature on or before December 10, 1965.