■ NORMAN R. FEIDEN, Respondent, v HARRY M. FEIDEN, Respondent, and JAMES H. TULLY, JR., as Conservator of the Property of FRANK T. FEIDEN, Appellant. (Action No. 1.) JAMES H. TULLY, JR., as Conservator of the Property of FRANK T. FEIDEN, Appellant, v HARRY M. FEIDEN et al., Respondents. (Action No. 2.)—Kane, J. P. Appeal from an order of the Supreme Court (Kahn, J.), entered July 27, 1988 in Albany County, which, *inter alia*, dismissed the conservator's cross claim in action No. 1 and the complaint in action No. 2.

On January 11, 1986, Frank T. Feiden conveyed his farm, consisting of approximately 41 acres, to his two sons, Harry M. Feiden and Norman R. Feiden.[1] Two deeds were executed and the property was divided between the two sons, with Harry receiving a greater share than Norman. A will previously executed had apparently divided the property equally between the two sons. In 1982, Frank had been diagnosed with organic brain syndrome or Alzheimer's disease and was placed in an adult home in 1984. However, in 1985 after being admitted to a hospital for surgery, the home could no longer care for him. It was while he was at the hospital, waiting to be admitted to a nursing home, that he signed the deeds. As a result, Norman commenced action No. 1 against Harry and Frank seeking to have the deeds set aside on the grounds of incompetency and undue influence. Thereafter, a conservator was appointed for Frank, who commenced a separate action (action No. 2) against the sons to set aside the deeds on similar grounds. The two actions were consolidated for trial and, at the close of the conservator's case, the claim of undue influence was dismissed. After trial, Supreme Court upheld the deeds' validity, finding that the proof was insufficient to

---

1. The three Feidens will hereinafter be referred to by use of their first names.

show that Frank was incompetent when he executed the deeds. This appeal by the conservator ensued.

We turn first to the question of Frank's competency. A party's competence is presumed and the party asserting incapacity bears the burden of proving incompetence (see, Matter of Gebauer, 79 Misc 2d 715, 719, affd 51 AD2d 643). Persons suffering from a disease such as Alzheimer's are not presumed incompetent and may execute a valid deed (see, 43 NY Jur 2d, Deeds, § 23, at 208; see also, Matter of Betz, 63 AD2d 769). Furthermore, it must be shown that, because of the affliction, the person was incompetent at the time of the transaction (see, Matter of Bush, 85 AD2d 887, 888). It has been stated that the inquiry is whether the person's mind was "so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction" (Aldrich v Bailey, 132 NY 85, 89; see, Ortelere v Teachers' Retirement Bd., 25 NY2d 196, 202).

In this case, the medical testimony as to Frank's mental capabilities was conflicting. One physician testified that in 1985 Frank was unable to handle his financial affairs, and one psychiatrist stated that between August 1985 and February 1986 Frank would have been unable to understand the consequences of the deeds. However, another psychiatrist testified to the contrary, noting that Frank "had lucid intervals" and could not be called "wholly incompetent". Further testimony revealed that an attorney initially contacted by Norman to draw up two deeds dividing the land equally decided not to have Frank sign those deeds because he was unsure of his competency. However, a second attorney contacted by Harry and who ultimately obtained Frank's signature on the deeds at issue testified very clearly and explicitly as to what occurred at the time of Frank's signing of the deeds. This testimony of the transaction indicated that Frank understood what he was signing, was aware that Harry was receiving more property and had the mental capacity to execute the deeds.[2] Additionally, the nursing summary notes for January 10, 1986 through January 12, 1986 stated that Frank was "alert and oriented", although he suffered from "periods of confusion and disorientation".

---

2. Although it is not clear on the record, the testimony indicated that Harry had been operating the farm, which constituted the bulk of the property, since Frank's retirement, while Norman ran the other businesses located on the remaining property which he received. Additionally, it appears that Harry had also been paying all the farm bills since Frank's illness.

We are aware that since this case was tried without a jury, we have the power to weigh the probative force of the conflicting inferences that may be drawn from the testimony and grant a judgment different than the trial court's if the evidence so warrants (see, Cordts v State of New York, 125 AD2d 746, 749-750). However, due deference must be given to the Trial Judge's decision as he was in a better position to assess the evidence and the credibility of the witnesses (see, supra). Here, although the medical evidence was contradictory, we find nothing improper in Supreme Court's crediting one opinion over another. There was also no testimony by the physicians as to Frank's mental condition on the day the deeds were signed. The two who testified as to his incapacity did not see him that day. The nursing summaries for the relevant time period also indicated he was having lucid periods. Additionally, the only person actually present at the signing was the attorney who obtained Frank's signature and his testimony supported the conclusion that Frank was competent. Therefore, since, as Supreme Court noted, there was "no direct proof that [Frank] was not lucid, alert or oriented at the time of the transaction", we agree with that court's conclusion that the presumption of competency was not overcome in this case.

We turn next to the question of whether Supreme Court improperly dismissed the claim of undue influence. Normally, the burden of proving such influence rests with the party asserting its existence (see, Allen v La Vaud, 213 NY 322). However, if a confidential relationship exists, the burden is shifted to the beneficiary of the transaction to prove the transaction fair and free from undue influence (Howland v Smith, 9 AD2d 197, 199, affd 10 NY2d 754). Here, the conservator argues that Frank's condition, when coupled with the fact that there was a family relationship, required the burden of proof to be shifted to the sons. However, the existence of a family relationship does not, per se, create a presumption of undue influence; there must be evidence of other facts or circumstances showing inequality or controlling influence (43 NY Jur 2d, Deeds, § 230, at 429). In our view, the state of Frank's health alone was insufficient in this case to shift the burden of proof. The conservator did not show the exercise of any controlling influence by the sons as a result of Frank's condition (cf., Allen v La Vaud, supra [grantor under care of grantee, heavily medicated and died within a few days of conveyance]; Noto v Sparacio, 56 AD2d 840 [deed executed without counsel and after last rites performed]). Since the

burden of proof remained with the conservator, we cannot say based on the record before us that Supreme Court erred in dismissing the claim of undue influence.

Order affirmed, without costs. Kane, J. P., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.