OPINION OF THE COURT
Edwin Kassoff, J.
This is a proceeding by petitioner to vacate and discharge a mortgage on real property made by Gertrude Menzel on the grounds that Ms. Menzel was incapacitated at the time of the mortgage transaction.
Gertrude Menzel allegedly executed an $81,000 mortgage to Delta Funding Corporation (Delta) on May 23, 1994 for premises located at 1717 George Street, Ridgewood, New York. The mortgage was recorded in book/reel 3918, page 1337, in the office of the City Register of the City of New York for the County of Queens. Delta subsequently assigned the mortgage to Bankers Trust Company of California, N. A. (Bankers Trust).
On May 5, 1995, the Ridgewood Older Adult Center and Services (Center), a facility Ms. Menzel attended for several years, commenced a guardianship proceeding pursuant to article 81 of the Mental Hygiene Law, seeking to have a guardian appointed for Ms. Menzel. On May 31, 1995, Ms. Menzel was adjudicated incapacitated and found unable to manage her affairs by this court and petitioner was appointed guardian for Ms. Menzel on July 26, 1995. Bankers Trust commenced a foreclosure proceeding against Ms. Menzel’s property in January 1996 as a result of Ms. Menzel’s alleged failure to make the payments required under the terms of the mortgage. Thereafter, on March 21, 1996, petitioner entered into a forbearance agreement with Delta whereby petitioner agreed to submit a $6,000 down payment and make monthly payments on the mortgage. Petitioner now moves, by order to show cause, to vacate the mortgage based on Ms. Menzel’s alleged incapacity at the time of the transaction.
In support of the motion, petitioner refers to the application to appoint a guardian for Ms. Menzel, where Thomas Cross-man, the Executive Director of the Center, alleged that Ms. Menzel was not aware that she had taken out a mortgage on her home in 1994. Mr. Crossman also alleged in that petition that Ms. Menzel was examined by Dr. Michael Gray, a board-certified neurologist and psychiatrist, on February 18, 1995, *606 who opined that Ms. Menzel suffered from dementia and cognitive impairment and has significant defects in recent and remote memory. Petitioner also noted that Dr. Jerome Abram-son, a psychotherapist, examined Ms. Menzel on March 24, 1995 and concluded that Ms. Menzel was a "frail old lady with diminished capacities” and had been "unfairly taken advantage of by some ruthless individuals”.
In opposition to the motion, Bankers Trust argues that there was no medical finding that Ms. Menzel was unable to manage her own affairs for nearly 10 months after the execution and delivery of the mortgage. It is alleged that these medical findings are not dispositive of Ms. Menzel’s capacity in May 1994. It is also argued that Bankers Trust did not have either actual or constructive notice of Ms. Menzel’s incapacity until at least July 26, 1995, the date petitioner was appointed as guardian for Ms. Menzel. Bankers Trust maintains that the mortgage is valid since it was executed prior to the commencement of the guardianship proceeding. In addition, Bankers Trust contends that it is a bona fide purchaser for value and title held by such bona fide purchasers without notice of any possible incapacity cannot be disturbed.
Bankers Trust also submits the affidavit of Beverly Gross-man, the title closer and notary public present at the closing of the mortgage. Ms. Grossman states that during the closing, Ms. Menzel was responsive to questions and provided photo identification upon request. She further states that she does not recall anything unusual or peculiar with regard to Ms. Menzel’s actions or behavior at the closing. Ms. Grossman also explains that it is her usual policy not to proceed with the closing if she determines that a borrower does not understand what is going on and is not represented by counsel.
In reply to the opposition, petitioner maintains that Ms. Menzel’s mental state was rapidly deteriorating since 1993. Petitioner states that by 1994, Ms. Menzel was not coherent and suffered from acute memory loss and was unable to manage her personal and financial affairs. As evidence of Ms. Menzel’s incapacity, petitioner states that various individuals at the Center noted that over an extensive period of time, Ms. Menzel suffered severe memory loss, loss of weight, loss of teeth, and shakiness. In addition, petitioner stated that according to a home health aide, Ms. Menzel would eat rancid and spoiled food. Moreover, petitioner notes that in the past years Ms. Menzel "took meticulous care of her appearance and was well-groomed”. However, he states that it is his understanding *607 that recently her appearance was disheveled and she often dressed inappropriately for the weather.
Petitioner also submits a letter dated July 22, 1996, from Frederic L. Gannon, a psychiatrist who examined Ms. Menzel on May 25, 1995. Dr. Gannon stated that Ms. Menzel was confused and disoriented as to time and date and could not provide an adequate picture of her present situation or past life experiences. Dr. Gannon concluded that Ms. Menzel suffers from dementia and organic brain syndrome. He further opined that she unquestionably lacked the ability to involve herself in any legal matters in May 1994.
Mental Hygiene Law § 81.29 (d) provides, in pertinent part, that "[i]f the court determines that the person is incapacitated and appoints a guardian, the court may modify, amend, or revoke * * * any contract, conveyance, or disposition * * * made by the incapacitated person prior to the appointment of the guardian if the court finds that the previously executed * * * contract, conveyance, or disposition * * * was made while the person was incapacitated.” It is important to note, though, that the mere incapacity of an individual under article 81 does not mean that the individual is incapable of engaging in various transactions. Indeed, one of the goals of article 81 is to create a guardianship system that is tailored to the individual needs of the incapacitated person and affords the incapacitated person the greatest amount of independence, self-determination, and participation in all decisions affecting the person’s life (see, Mental Hygiene Law § 81.01).
The court notes that there do not appear to be any reported cases addressing the validity of a contract or mortgage executed prior to the commencement of an article 81 proceeding where a guardian is appointed for the individual executing the above document. However, under former articles 77 and 78 of the Mental Hygiene Law, the conservatorship and committee statutes, there are cases that discuss the effect of an adjudication of incompetence on contracts previously executed.
Under the former statutes, it is well settled that the contracts of a person of unsound mind who has not been judicially declared incompetent are voidable, rather than void, at the election of the incompetent or his duly authorized representative (Ortelere v Teachers’ Retirement Bd., 25 NY2d 196, 202; Finch v Goldstein, 245 NY 300, 302; Smith v Ryan, 191 NY 452, 455; Blinn v Schwarz, 177 NY 252, 262; Matter of Gebauer, 79 Misc 2d 715, 719, affd 51 AD2d 643). The law presumes the competence of an individual (Feiden v Feiden, *608 151 AD2d 889, 890; Matter of Pinnock, 83 Misc 2d 233, 238). The burden of proving one’s incompetence is on the party alleging it (Feiden v Feiden, supra, 151 AD2d, at 890; Chickowski v Cusick, 62 NYS2d 294; Matter of Gebauer, supra, 79 Misc 2d, at 719; Fingerhut v Kralyn Enters., 71 Misc 2d 846, 850, affd 40 AD2d 595).
As a general rule, mental weakness alone is not sufficient to justify setting aside a contract (5 Williston, Contracts § 10:3, at 238 [4th ed 1993]). Rather, the test is whether, at the time of the transaction, the party was so deprived of his mental faculties as to be wholly unable to understand or comprehend the nature of the transaction (Aldrich v Bailey, 132 NY 85, 87; Feiden v Feiden, supra, 151 AD2d, at 890; Broat v Broat, 18 NYS2d 709; see also, 66 NY Jur 2d, Infants and Other Persons Under Legal Disability, § 109). Moreover, it has been held that if a mortgagor understood fully the general nature of the transaction, the validity of the instrument is not affected by the fact that the mortgagor may not have comprehended all the details of the transaction (Merritt v Merritt, 32 Misc 21, 25, affd 62 App Div 617).
Notwithstanding the above, it is clear that title held by a bona fide purchaser for value without notice of any possible incompetency cannot be disturbed (Goldberg v McCord, 251 NY 28, 31; Flatbush Sav. Bank v Fraser, 21 Misc 2d 693, 694). The Court of Appeals explained in Goldberg that "[a]n insane person, before office is found, may convey a good title; his deed is not void, but voidable * * * and it is not even voidable as against bona fide purchasers for value without notice of the incompetency.” (Goldberg v McCord, supra, 251 NY, at 32 [citations omitted].) The Court further explained that the mere opinion of a doctor as to how long one’s incompetency existed should not render unmarketable all title passing through the alleged incompetent. The Court noted that such a ruling would be disastrous to real estate titles and make the sale of real property extremely difficult and uncertain (Goldberg v McCord, supra, 251 NY, at 31, 33). Similarly in Mutual Life Ins. Co. v Hunt (79 NY 541), a case dealing with the foreclosure of a bond and a mortgage, the Court explained that a contract executed by parties that have been dealing fairly and in ignorance of an alleged incompetency, shall not be set aside. The Court reasoned that if a contract was declared invalid in such a case, then all ordinary dealings between individuals would be rendered unsafe (Mutual Life Ins. Co. v Hunt, 79 NY 541, 546, supra).
*609 Applying the above principles to the matter at hand, the court first finds that Bankers Trust is a bona fide purchaser for value, and, therefore, the mortgage it holds is valid. The evidence submitted reveals that Bankers Trust had no notice of Ms. Menzel’s incapacity at the time the mortgage was executed. The affidavit from Beverly Grossman, the title closer, indicates that there was nothing strange or unusual in Ms. Menzel’s behavior or appearance at the time of the closing. Ms. Grossman stated that it is her policy not to proceed with a closing if a particular borrower does not appear to understand the events that are happening. She also stated that Ms. Menzel was responsive to questions.
The court further finds that the evidence submitted by the petitioner is clearly insufficient to raise any type of factual issue regarding Ms. Menzel’s incapacity at the time of the execution of the mortgage. Petitioner submitted a letter from Dr. Gannon, a psychiatrist, who examined Ms. Menzel on May 25, 1995, a year after the execution of the mortgage. This letter provides no evidence that Ms. Menzel was incapacitated at the time she executed the mortgage. Similarly, a statement from Dr. Jerome Abramson, a psychotherapist, provides no support for a finding of incapacity in May 1994 as his examination of Ms. Menzel occurred on March 24, 1995 (see, Broat v Broat, supra, 18 NYS2d, at 713). Furthermore, much of the evidence of Ms. Menzel’s incapacity provided by petitioner was based on hearsay, such as alleged eyewitness accounts of Ms. Menzel by individuals at the Center. Therefore, since the evidence is insufficient for the court to find that Ms. Menzel was incapacitated at the time she executed the mortgage, the court will not revoke or vacate the mortgage, pursuant to Mental Hygiene Law § 81.29 (d).
Accordingly, the motion by petitioner to vacate and discharge the mortgage is denied.