**Richard A. LIVINGSTON, Plaintiff,**

v.

**BEV–PAK, INC., d/b/a Adirondack Beverages, Defendant.**

**No. CIV. 95–CV–113 (LEK/R).**

United States District Court, N.D. New York.

Sept. 18, 2000.

## MEMORANDUM DECISION AND ORDER

SMITH, United States Magistrate Judge.

This is a civil action for damages for race discrimination brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the New York Human Rights Law (the "HRL"), N.Y. Exec. Law §§ 296 and 297. The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Presently before the Court is Defendant's motion for summary judgment (hereinafter the "Motion"). For the reasons set forth below, the Court grants Defendant's Motion and dismisses Plaintiff's complaint with prejudice.

### I. *Standard of Review*

Pursuant to Fed.R.Civ.P. 56(c), a court may grant a party's motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996). When analyzing the motion, the court's function "is not to weigh the evidence, make credibility determinations or resolve issues of fact, but rather to determine whether, drawing all reasonable inferences from the evidence presented in favor of the non-moving party, a fair-minded jury could find in the non-moving party's favor." *Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir.1997) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party satisfies this standard, the burden shifts to the non-moving party to set forth specific facts indicating that genuine issues of material fact exist. *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996). In opposing the motion, the non-moving party may not merely rely upon the pleadings, but "must set forth specific facts showing that there

is a genuine issue for trial." Fed.R.Civ.P. 56(e). Where the evidence in the record could reasonably support a verdict in favor of the non-moving party, the court must deny the moving party's motion. *Beatie,* 123 F.3d at 711 (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court will grant the moving party's motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. *Background*

Construing the evidence in the light most favorable to Plaintiff, the facts are as follows. In 1986, Defendant hired Plaintiff to work in the production department of Defendant's Scotia, New York, plant as a general line worker. In 1989, Plaintiff was promoted to the position of filler-operator and became responsible for stocking the bottle cap and can lid machines, filling the bottles or cans to their proper height, and keeping the general work area clean. Plaintiff's supervisor in this position was James Rufer. Once Rufer learned that Plaintiff was of Hispanic descent, he began to make repeated derogatory comments to Plaintiff on the basis of Plaintiff's ethnic background. Furthermore, on at least one occasion, Rufer physically assaulted Plaintiff. Plaintiff complained to Defendant's upper level employees about Rufer's conduct, including Douglas Martin, Defendant's Director of Operations, but no action was taken.

On October 28, 1991, Plaintiff incorrectly capped 300 cases of one-liter bottles. The next night, Rufer asked Plaintiff to move the case of bottle caps with an hydraulic pallet jack so that other bottles would not be mis-capped, but Plaintiff refused to do so. Plaintiff told Rufer that such work was not a part of his job description and further explained that he had suffered a traumatic experience with a pallet jack as a child. The next day, Martin fired Plaintiff for insubordination. Plaintiff then filed a grievance against Defendant through his union and sought reinstatement to his former position, back pay, and no loss of benefits.

In December 1991, the unemployment insurance administrative law judge ("ALJ") found that, although Defendant had been warranted in removing Plaintiff from its payroll, Plaintiff's conduct did not rise to the level of misconduct under the Unemployment Insurance Law. Consequently, the ALJ found that Plaintiff was not ineligible for unemployment benefits. Faced with one unfavorable decision, Defendant proposed to reinstate Plaintiff as of January 10, 1992 to the lower-paying position of general line worker and to leave all questions relating to his demand for complete exoneration, reinstatement to the position of filler-operator, and back pay to the grievance ALJ. When Plaintiff refused to show up for work despite Defendant's repeated efforts to contact him, he was fired again on February 6, 1992.

On June 23, 1992, the grievance ALJ found that, although Plaintiff had been insubordinate when he refused to move the case of bottle caps, his insubordination did not warrant the ultimate penalty of termination. Accordingly, the ALJ reduced Plaintiff's termination on October 30, 1991 to a suspension without pay for 60 days followed by a disciplinary demotion from filler-operator to general line worker, and he ordered Defendant to compensate Plaintiff for the income that he would have earned between January 1, 1992 (the date that Plaintiff's 60–day suspension expired) and January 17, 1992 (the latest date by which Plaintiff should have been aware of Defendant's offer to reinstate him). The ALJ further found that, although Defendant was not required to compensate Plaintiff after January 17, 1992 for the time that Plaintiff did not work, Plaintiff was still eligible to return to the general line worker position that Defendant had offered to him.

Plaintiff returned to work on July 6, 1992. On August 7, 1992, Plaintiff filed charges with the New York State Division of Human Rights (the "SDHR") alleging that Defendant had discriminated against him on the basis of his national origin. On September 22, 1992, the SDHR notified Defendant that Plaintiff had filed charges against it and that the charges were "dual filed" with the Equal Employment Opportunity Commission (the "EEOC"). As the SDHR explained, dual filing created two charges against Defendant (one pending before the SDHR and the other pending before the EEOC) and allowed the EEOC to review the SDHR's final decision if Defendant submitted its request for review within 15 days of the date that it received a copy of that decision and order.

On October 6, 1992, Martin called Plaintiff into his office and began yelling at him. Martin said that Plaintiff was going to be fired, and he offered Plaintiff $10,000 to drop the SDHR and EEOC charges that were pending against Defendant. Plaintiff was not encouraged to consult with an attorney, and in fact, he did not do so. Martin told Plaintiff to wait outside his office while he made a few changes to the release agreement that had been prepared by Defendant's attorney. Martin called Plaintiff back into his office about ten minutes later, and Plaintiff signed the agreement.

Pursuant to the terms of the release agreement, Plaintiff sought to withdraw his federal and state claims of discrimination. On April 29, 1993, the SDHR ordered Plaintiff's complaint withdrawn and closed his file. On August 2, 1993, the EEOC issued a similar order. On December 2, 1994, however, the EEOC responded to a letter sent by Congressman Michael R. McNulty and stated that information presented to it indicated that

Plaintiff may have lacked the mental capacity to sign the release agreement. The EEOC thus issued Plaintiff a notice of right to sue on December 7, 1994 so that, if Plaintiff were successful in invalidating the release agreement, he could continue the action on the underlying claim.

On January 24, 1995, Plaintiff filed his complaint against Defendant and alleged that he had been discriminated against on the basis of his race and national origin. Plaintiff subsequently amended his complaint three times and alleged each time that Martin and Rufer forced him to resign on October 6, 1992 by telling him that, if he did not, they would continue to harass, humiliate, and retaliate against him. Plaintiff did not mention his alleged lack of capacity to sign the release agreement in his initial Complaint or in any of the amendments thereto.

On May 20, 1996, Defendant filed a motion to dismiss the complaint, inter alia, on the grounds that Plaintiff had failed to submit any proof that he signed the release agreement under duress. On September 11, 1996, this Court agreed and concluded that Plaintiff had failed to establish that he had not knowingly and voluntarily signed the release agreement. Plaintiff appealed the Court's decision, and the Second Circuit reversed. Although Defendant argued, and this Court found, that the EEOC's determination that Plaintiff was challenging the release agreement due to his own competency barred him from challenging the agreement on any other grounds, the Second Circuit held that "[a]s long as [Plaintiff] set forth a viable claim of duress, his complaint should have been allowed to proceed." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir.1998).[1] Accordingly, the

---

1. The Court notes that Defendant devoted a significant portion of its Motion, Reply, and Supplemental Memorandum to the argument that, because the EEOC only issued Plaintiff a notice of right to sue because he challenged his competency to execute the release agreement, Plaintiff is barred from arguing in his complaint that the release agreement is invalid on the grounds of duress. This argument was clearly rejected by the Second Circuit, and the Court does not consider it further.

Second Circuit remanded the case for further proceedings.

On March 30, 2000, Defendant filed its Motion and raised several grounds in support thereof. The Court reviewed the Motion, Plaintiff's Opposition, and Defendant's Reply, and, on July 13, 2000, it ordered the parties to brief the issue of whether Plaintiff's claims are barred by payment and/or ratification. The parties have filed their briefs, and the matter is now ripe for adjudication. For the reasons set forth below, the Court finds that, with respect to his federal claims, Plaintiff has ratified the release agreement by failing to either tender back or offering to tender back the $10,000 that he received from Defendant in consideration for signing the release agreement. With respect to Plaintiff's state claims, the Court finds that Plaintiff executed the agreement knowingly and voluntarily and has not put forth sufficient evidence to invalidate the agreement either on the grounds of incapacity or duress.

### III. *Validity of the Release Agreement*

#### A. Plaintiff's Federal Law Claims

 Under Title VII, an employee may waive a claim against his employer for discrimination if the waiver is knowingly and voluntarily made. *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 402 (2d Cir.1989). Factors that a court considers to determine whether a waiver is knowingly and voluntarily made include the following: (1) the plaintiff's education and business experience; (2) the amount of time that the plaintiff had possession of or access to the agreement before he signed it; (3) the plaintiff's role in deciding the terms of the waiver agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney prior to signing the agreement; (6) whether the consideration given to the plaintiff in exchange for the waiver exceeds the employee benefits to which the plaintiff was already entitled by contract or law; (7) whether the employer encouraged or discouraged the plaintiff to consult with an attorney; and (8) whether the plaintiff had a fair opportunity to consult with an attorney prior to signing the agreement. *Id.* at 403. These factors are not exhaustive, nor must all of the factors be satisfied for a court to find that the waiver is enforceable. *Id.*

 In the present case, Plaintiff argues that, regardless of whether he signed the release agreement knowingly and voluntarily, the agreement is voidable on the grounds of mental incapacity and/or duress.[2] The Court disagrees.

 With regard to Plaintiff's claim of mental incapacity, the Court notes that, despite the fact that Plaintiff has been permitted to amend his complaint on three separate occasions, he has never alleged that he lacked the capacity to sign the release agreement. Although the time to amend the pleadings has long since expired, there is some authority for the proposition that the Court should construe Plaintiff's present assertion as a belated motion to amend his complaint. *See Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir.2000); *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir.1993).[3] However, even if the

---

**2.** In fact, Plaintiff alleges that the release agreement is void. A contract executed by a party who suffers from a mental illness or defect, however, is voidable, not void. *Reid v. IBM Corp.*, 1997 WL 357969, at *7 (S.D.N.Y. June 26, 1997) (quoting the Restatement (Second) of Contracts § 15(1)). Similarly, a contract executed under duress "is not per se void, but merely is voidable." *Kovian v. Fulton County Nat'l Bank and Trust Co.*, 857 F.Supp. 1032, 1039 (N.D.N.Y.1994) (citing

·*Barnette v. Wells*, 270 U.S. 438, 444, 46 S.Ct. 326, 70 L.Ed. 669 (1926); *DiRose v. PK Management Corp.*, 691 F.2d 628, 633 (2d Cir. 1982); Restatement (Second) of Contracts § 175).

**3.** The Court notes that both *Monahan* and *Block* are distinguishable from the present case in that they involved new defenses that were raised by a defendant for the first time in its motion for summary judgment. Al-

Court were inclined to construe Plaintiff's assertion as a motion to amend, it would nevertheless deny the motion on the grounds that the amendment would be futile. *Monahan*, 214 F.3d at 283 (holding that a court need not construe a claim raised in response to a dispositive motion as a motion to amend where evidence suggests that the claim is the product of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility). A party's capacity is presumed, and, to overcome this presumption, the party carries an "extremely heavy" burden of demonstrating that he lacked capacity at the time of the disputed transaction. *Harrison v. Grobe*, 790 F.Supp. 443, 447 (S.D.N.Y.1992), *aff'd*, 984 F.2d 594 (2d Cir. 1993) (citations omitted). Plaintiff fails to meet this burden. Nowhere does Plaintiff state in what way or to what extent he was mentally incapacitated, nor does he offer any proof to show that he was incapacitated at the time that he signed the release agreement. *See Reid v. IBM Corp.*, 1997 WL 357969, at *7–8 (S.D.N.Y. June 26, 1997) (rejecting plaintiff's claims of mental incapacity where plaintiff failed to present evidence sufficient to demonstrate that he had a mental disability when he signed the release agreement or that the disability impaired his ability to act in a reasonable manner). Plaintiff's simple assertion that he lacked the capacity to execute the release agreement is insufficient to support a motion to amend the complaint, and it is insufficient to defeat Defendant's motion for summary judgment. Accordingly, the Court concludes that the release agreement is not voidable on the grounds of mental incapacity.

■ The Court also determines that the release agreement is not voidable on the grounds of duress. Although Plaintiff is not barred from arguing that he signed the release agreement under duress merely because the EEOC did not issue its notice of right to sue on these grounds, he must nevertheless set forth a viable claim. *Livingston*, 141 F.3d at 438. To do this, Plaintiff must show that he acted promptly to repudiate the release agreement. *Di-Rose v. PK Management Corp.*, 691 F.2d 628, 633–34 (2d Cir.1982). Plaintiff fails to do so. The first time that Plaintiff raised his claim of duress was when he filed his initial complaint on January 25, 1995, almost two and a half years after he signed the release agreement. Courts have found that a plaintiff failed to act promptly where less time elapsed between the date of the alleged duress and the date of the attempted repudiation. *In re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st Cir.1989) (finding one and a half years untimely); *Anselmo v. Manufacturers Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir.1985) (holding ten months untimely); *Harless v. Research Inst. of Am.*, 1 F.Supp.2d 235, 243 (S.D.N.Y.1998) (holding fifteen months untimely); *Dorn v. Astra USA*, 975

though the Court has been unable to locate any Second Circuit cases addressing whether a plaintiff may assert a new claim in response to a defendant's motion for summary judgment, such a practice is disfavored in other jurisdictions. *See, e.g., Schaffer v. A.O. Smith Harvestore Prod., Inc.*, 74 F.3d 722, 731 (6th Cir.1996) (affirming lower court's granting of summary judgment against plaintiffs where plaintiffs never raised claim of vicarious liability in their complaint); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir.1991) (finding no error in lower court's refusal to consider new claim raised by plaintiff in response to defendant's motion for summary judgment); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990) (holding that lower court properly refused to consider claim raised by plaintiff for the first time in opposition to defendant's motion for summary judgment); *Computer Aid, Inc. v. Hewlett–Packard Co.*, 56 F.Supp.2d 526, 537–38 (E.D.Pa.1999) (granting plaintiff's motion for partial summary judgment on defendants' counterclaims where defendants raised additional grounds in support of counterclaims for the first time in response to plaintiff's motion); *Johnson v. Methodist Med. Cent. of Ill.*, 1992 WL 551632, at *5 (C.D.Ill. June 26, 1992), *aff'd*, 10 F.3d 1300 (7th Cir.1993) ("When new claims of liability are raised for the first time in response to a motion for summary judgment and are not contained in the pleadings, they need not be considered by the court.").

F.Supp. 388, 394 (D.Mass.1997) (rejecting claims of plaintiffs, who waited between 11 and 34 months to assert claims of duress, as untimely); *Sudul v. Computer Outsourcing Servs., Inc.*, 917 F.Supp. 1033, 1047 (S.D.N.Y.1996) (holding two years untimely). Because Plaintiff did not promptly repudiate the release agreement, he may not now argue that he signed the agreement under duress.[4]

 Finally, the Court finds that, even if Plaintiff did not knowingly and voluntarily execute the release agreement, he has since ratified the agreement by his inaction. "Ratification is an act by which an otherwise voidable and, as a result, invalid contract is confirmed, and thereby made valid." *Clark v. Buffalo Wire Works Co.*, 3 F.Supp.2d 366, 371–72 (W.D.N.Y.1998) (citations omitted). It occurs at the point that a party learns that his prior agreement not to sue is voidable but continues to accept the benefits of that agreement. *Kristoferson v. Otis Spunkmeyer, Inc.*, 965 F.Supp. 545, 548 (S.D.N.Y.1997). A key element of ratification, therefore, is the failure of the plaintiff to tender back, or to offer to tender back, the consideration that he received in exchange for executing the release. *Fleming v. United States Postal Serv. AMF O'Hare*, 27 F.3d 259, 260–61 (7th Cir.1994); *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 937 (5th Cir.1994); *Clark*, 3 F.Supp.2d at 371; *Dorn*, 975 F.Supp. at 394; *Kristoferson*, 965 F.Supp. at 549.[5] Plaintiff, however, has neither tendered back, nor offered to tender back, the $10,000 that he received in consider-

ation for signing the release agreement. Although the Court is sympathetic to the fact that Plaintiff originally proceeded pro se in this lawsuit, he has been represented by counsel for almost two years. The fact that Plaintiff's counsel is aware of the requirements of the tender back rule is evidenced by his discussion of it in his Supplemental Memorandum of Law, which was filed in response to the Court's order that the parties address whether Plaintiff's complaint is barred by payment and/or ratification. Because Plaintiff seeks to retain the benefit of the release agreement while attempting to avoid its consequences, the Court concludes that Plaintiff has ratified the agreement. Accordingly, Plaintiff is barred from bringing his federal law claims.

### B. Plaintiff's State Law Claims

 The Court also finds that Plaintiff's state law claims are barred. Although New York courts also require that a release agreement be executed knowingly and voluntarily in order to be enforceable, *Skluth v. United Merchants & Mfrs., Inc.*, 163 A.D.2d 104, 106, 559 N.Y.S.2d 280, 282 (1st Dep't 1990), they have rejected *Bormann*'s "totality of the circumstances" test and, instead, apply general principles of contract law. *Goode v. Drew Bldg. Supply, Inc.*, 266 A.D.2d 925, 926, 697 N.Y.S.2d 417, 417–18 (4th Dep't 1999). Under New York law, as long as the language of the release agreement is clear, courts will give effect to the intent of the parties as evidenced by that language. *Id.*

---

4. Furthermore, there is no evidence in the record to justify Plaintiff's delay. Plaintiff simply argues in his complaint and in his deposition testimony that he signed the release agreement while being threatened and taunted by Martin, Am. Compl. ¶ 53; Livingston Dep. at 35, and there is nothing to suggest that the duress that Plaintiff endured *extended beyond the time that he was forced* to sign the agreement.

5. The Court notes that there is a split among the various jurisdictions as to whether a plaintiff is obligated to tender back the con-

sideration that he received in order to avoid ratifying his agreement, or whether he may simply offer to tender the consideration back. *Compare Williams*, 23 F.3d at 937 (holding that a plaintiff must first tender back the consideration received in order to challenge a release agreement); *Reid*, 1997 WL 357969, at *10–11 (same) *with Dorn*, 975 F.Supp. at 394 (permitting a plaintiff to offer to tender back the consideration received); *Kristoferson*, 965 F.Supp. at 548–49 (same). In the present case, this distinction is largely academic since Plaintiff has done neither.

(citations omitted). In the present case, the language of the release agreement clearly indicates that, in consideration of $10,000, Plaintiff intentionally gave up and released all claims and disputes that he had or might have had against Defendant without limitation. Thus, unless Plaintiff can demonstrate that he did not knowingly and voluntarily execute the release agreement, he will be bound by its terms and precluded from bringing the instant lawsuit.

As with his federal claims, Plaintiff argues that he is not barred from bringing his state claims on the grounds that he lacked the mental capacity to sign the release agreement and/or that he signed the agreement under duress. Again, the Court is not persuaded. As stated above, a party's mental capacity is presumed, and the party asserting incapacity must show that he was incapacitated at the time of the disputed transaction. *Feiden v. Feiden,* 151 A.D.2d 889, 890, 542 N.Y.S.2d 860, 862 (3rd Dep't 1989). Plaintiff has proffered no evidence to show to what extent he was incapacitated or that he suffered from this incapacity at the time that he signed the release agreement. Accordingly, the Court rejects his claim that the agreement is voidable under state law due to his alleged incapacity.

 The Court also finds that Plaintiff fails to establish a valid claim of duress under state law. As with a claim of duress brought pursuant to federal law, Plaintiff must show that he acted promptly to avoid a release on the grounds of du-ress. *Port Chester Elec. Constr. Corp. v. Hastings Terraces, Inc.,* 284 A.D. 966, 967, 134 N.Y.S.2d 656, 658 (2d Dep't 1954). The Court finds that Plaintiff's decision to wait two and a half years prior to challenging the release agreement on the grounds of duress is untimely as a matter of law. *See, e.g., Leader v. Dinkler Management Corp.,* 26 A.D.2d 683, 683, 272 N.Y.S.2d 397, 398–99 (2d Dep't 1966), *aff'd,* 20 N.Y.2d 393, 230 N.E.2d 120, 283 N.Y.S.2d 281 (1967) (holding six months untimely); *Powell v. Oman Constr. Co.,* 25 A.D.2d 566, 566, 267 N.Y.S.2d 862, 864 (2d Dep't 1966) (holding eleven months untimely); *Feyh v. Brandtjen & Kluge, Inc.,* 1 A.D.2d 1014, 1014, 151 N.Y.S.2d 454, 455–56 (2d Dep't 1956), *aff'd,* 3 N.Y.2d 971, 146 N.E.2d 794, 169 N.Y.S.2d 38 (1957) (holding six months untimely); *Port Chester Elec.,* 284 A.D. at 966–67, 134 N.Y.S.2d at 658 (holding 15 months untimely). Accordingly, Plaintiff may not avoid the effect of the release agreement on the grounds of duress.

 Because Plaintiff fails to establish either that he was incapacitated or under duress when he signed the release agreement, he therefore cannot establish that he did not knowingly and voluntarily execute the agreement. Accordingly, under *Goode,* the Court must give effect to the parties' intent as evidenced by the clear language of the agreement. This language shows that Plaintiff waived all claims that he had or might have had against Defendant, and he is thus barred from bringing his state law claims as well.[6]

---

6. Further, as with his federal law claims, the Court finds that the doctrine of ratification bars Plaintiff from bringing any state law claims that would otherwise be viable. Although New York abolished the tender back rule when it enacted N.Y. C.P.L.R. § 3004, *Clark,* 3 F.Supp.2d at 372 (citing *Skipworth v. Cooper,* 37 A.D.2d 906, 907, 325 N.Y.S.2d 485, 485 (4th Dep't 1971)), other factors may lead a court to conclude that a party has ratified an otherwise voidable contract. These factors include (1) the party's awareness of the voidable nature of the release and the length of time that the employee retains the consideration after he learns that the release is voidable before attempting to repudiate the release; and (2) whether the circumstances that made the release voidable persisted. *Id.* (citations omitted). In the present case, Plaintiff continues to retain the $10,000 that he received in consideration for signing the release even as he has sought to invalidate the agreement on the grounds of mental incapacity and/or duress. Further, assuming arguendo that Plaintiff was mentally incapacitated and/or under duress when he signed the agreement, there is no evidence that these conditions persisted thereaf-

## IV. Conclusion

For the reasons set forth above, it is hereby

ORDERED that Defendant's Motion is GRANTED and that Plaintiff's Complaint is DISMISSED with prejudice.

ter. Plaintiff has thus ratified the release agreement, and he may not now seek to avoid its consequences.