REMI SAUNDER, Respondent, v MIKHAIL BARYSHNIKOV et al., Appellants.

Plaintiff was a friend and employee of defendant, helping the latter to adjust to his new life after his defection from the U.S.S.R. and to his many responsibilities as premier dancer, choreographer and artistic director of the American Ballet Theatre. The parties first met in 1974; plaintiff quickly became a confidante, helping in a number of ways, such as translating, handling correspondence and appointments, overseeing interior decorations, organizing dinners, hiring help and making travel arrangements. She even became a signatory on his checking account.

Defendant was generous in his gratitude, making his funds freely available to plaintiff in the form of interest-free, open-ended loans in amounts up to $14,500, many of which were never repaid; taking her on several dance tours in Europe and South America; paying a large portion of her living expenses, including, at various times, her rent, phone and utility bills, medical expenses, as well as gas and parking for the two cars he gave her, etc.

By her complaint plaintiff alleges that she was hired as defendant's "general manager and overall comptroller, agent, appointments secretary, financial advisor and consultant". Defendant's answer admits she was hired as "an appointments and private secretary."

Not until 1980, however, was plaintiff specifically placed on salary (approximately $20,000 per annum) and given $6,000 as recompense for past services. The memoranda, canceled checks and the like which evidence this are in the record. Thus, plaintiff's first two causes of action, seeking $400,000 in quantum meruit or upon a theory of unjust enrichment, must fail perforce the evidence of accord and satisfaction. (*Cf. Hirsch v Berger*

*Import & Mfg. Corp.*, 67 AD2d 30, *appeal dismissed* 47 NY2d 1008; 19 NY Jur 2d, Compromise, Accord, and Release, §§ 7, 8, 26.)

Equally, we can find no justification for denying defendant summary judgment dismissing the third cause of action, which alleges that defendant "did promise the plaintiff, that since she had performed substantial services for him, and in recognition of those services he would 'take care of her and her financial needs for the rest of her life'." In claiming $1 million upon this cause of action, however, plaintiff offers no proof that the alleged oral promise was actually made, much less what the parameters of it were intended to be. While plaintiff asserts, in her brief to this court, that "[t]he evidence will certainly show that there was such an enforceable contract", this is, plainly, too insubstantial to resist a motion for summary judgment. (*McGahee v Kennedy,* 48 NY2d 832; *Freedman v Chemical Constr. Corp.,* 43 NY2d 260, *affg* 56 AD2d 514; *Indig v Finkelstein,* 23 NY2d 728.) Not only is the lack of a writing fatal under the Statute of Frauds (General Obligations Law § 5-701 [a] [1]), but the vagueness as to material details (form, frequency and amount of payment), renders the assertion of a contract meaningless. (*Cf.* 1 Corbin, Contracts § 95 ["A court cannot enforce a contract unless it can determine what it is."]); *see also, Martin Delicatessen v Schumacher,* 52 NY2d 105, 109; *Varney v Ditmars,* 217 NY 223, 227-228.)

We find defendants also entitled to summary judgment upon their first counterclaim, for return of $11,000 in loans and return of certain personal property specified in the pleadings and record. The checks to plaintiff, one for $5,000 and one for $6,000 were both signed by her and recorded as loans to her. The second was drawn the very day she was fired. Plaintiff's answers to interrogatories admit that these were loans and it was not until defendants' motion for summary judgment that she asserted these checks to be drawn against alleged back pay due her.

We are persuaded that defendants' motion for summary judgment, with respect to the second counterclaim, was properly denied. There are issues of fact precluding the granting thereof.

The deposition testimony and the affidavits relied upon are equivocal. Plaintiff in her deposition admits that some of the property in the list, without designating, came from Baryshnikov and was in her possession. The record, however, indicates questions as to the basis in which Baryshnikov gave any or all of these items to the plaintiff during the six years that plaintiff was defendant's personal confidante. There is a triable issue as to whether it was intended that the property be hers or that of

defendant when it came into her possession and when Baryshnikov terminated the relationship. Further, the bald assertion that these items are his property, without any explanation as to when and under what circumstances they came into plaintiff's possession, is insufficient to support a motion for summary judgment.

While plaintiff's deposition testimony does not indicate which items belong to her, it does raise an issue sufficient to defeat defendants' motion for summary judgment. As stated in *Winegrad v New York Univ. Med. Center* (64 NY2d 851, 853), reversing a grant of summary judgment to the defendants: "The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (*see, Zuckerman v City of New York,* 49 NY2d 557, 562; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404). Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers (*Matter of Redemption Church of Christ v Williams,* 84 AD2d 648, 649; *Greenberg v Manlon Realty,* 43 AD2d 968, 969)."

Moreover, plaintiff's affidavit in opposition states: "That as concerns the items of property MISHA makes claim too [*sic*] again I cannot catagorically [*sic*] state they are all his. In fact I have made every effort to determine just what he actually paid for or what I paid for. In addition as to many of those items I recollect MISHA telling me that if I enjoyed any of them to just take some for my apartment. I specifically recall the photos of MISHA himself that I admired which he said I could help myself too [*sic*]. Indeed other items were also given to me by MISHA with instructions to do as I please."

This is sufficient to raise a triable issue as to the second counterclaim. Concur — Carro, J. P., Asch, Fein and Milonas, JJ.