United States Court of Appeals,

Fifth Circuit.

No. 94-30264

Summary Calendar.

Rolf WITTORF and Waltraut Johanna Schneider Wittorf, Plaintiffs-Appellants,

v.

SHELL OIL COMPANY and Shell Offshore, Inc., Defendants-Appellees.

Nov. 16, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before SMITH, EMILIO M. GARZA and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Plaintiffs-Appellants appeal the district court's granting of Defendants-Appellees' motion for summary judgment. They challenge the court's finding that Plaintiff-Appellant Rolf Wittorf ("Wittorf") knowingly and voluntarily waived all claims against Defendants-Appellees and ratified the release he signed by retaining the enhanced severance benefits he was paid. Mrs. Wittorf challenges the court's finding that she does not have a valid claim of damages to her community property interest in her husband's severance plan due to the fact that her husband's claim is not valid. We affirm.

FACTS AND PROCEDURAL HISTORY

Wittorf was employed by Shell Offshore, Inc. ("Shell"), a wholly owned subsidiary of Shell Oil Company, as a supervisor in the Offshore Construction Shelf Division. In September 1992, Shell announced that it was reducing the size of its workforce, and that it was offering certain employees the opportunity to voluntarily terminate their employment under the terms of a special severance plan. By signing a release and waiver of claims, those employees who volunteered to terminate would receive enhanced severance benefits, including three weeks of salary for each year of accredited service, with a minimum of fifteen and a maximum of seventy-eight weeks of salary. The normal severance benefits provided for only one week of salary for each year of service with no minimum and a maximum of ten weeks pay.

On October 27, 1992, Wittorf was offered the opportunity to voluntarily terminate his employment under the plan. He was provided with a package of severance material at that time. The materials he received included a Summary Plan Description, a Decision Form, a Release and Settlement Agreement,[1] and a list of all persons and classifications eligible and ineligible for the plan.

On December 14, 1992, Wittorf signed the Decision Form. The option he selected stated in part:

> I hereby volunteer to terminate my employment under the terms of the Plan and receive an Enhanced Special Severance Allowance.
>
> ....
>
> I understand that should I volunteer to terminate my employment ... I must abide by the conditions of the Plan to qualify for a Separation Allowance. These conditions include ... signing the Release and Settlement Agreement.

On January 28, 1993, he signed the Release and Settlement Agreement and delivered it to Shell, along with a letter stating his concerns regarding possible employment discrimination and ERISA violations. His letter further stated that he was considering revoking the Agreement within the seven day period provided for in the Release and Settlement Agreement. However, he did not revoke within the seven days.

Having signed the Release and Settlement Agreement, Shell paid Wittorf $47,986.15 in enhanced severance benefits; $36,000 more than he would have received in normal severance

---

[1]The Release and Settlement Agreement provided in pertinent part:

> I have had an opportunity to fully consider all aspects of my employment relationship with the Company. I have also had an opportunity to seek counsel from anyone I choose and I have been advised in writing to consult with an attorney, should I desire, prior to signing this Agreement. *After full consideration I represent that I have not asserted and agree that I will not assert against the Company ... any claim or action, of any kind, nature, or character whatever, with respect to any matter pertaining to or arising from my employment or termination of employment with the Company....*
>
>     ....
>
> *... I understand that I may revoke the Agreement for seven (7) days after the date I sign it, and the Agreement will not become enforceable until this seven (7) day period has expired. Any revocation must be made in writing.*

(Emphasis added).

benefits. It is undisputed that Wittorf would not have otherwise been entitled to receive the enhanced benefits; such benefits were paid strictly in as consideration for his release of Shell. He never returned the money to Shell, nor did he make an offer to return the money.

On January 12, 1994, Wittorf and his wife filed suit in state court claiming violations of the ADEA, the ADA and ERISA, along with similar state law claims. The suit was removed to federal district court on the basis of federal question and supplemental jurisdiction. Shell subsequently filed a motion for summary judgment on the basis of the Release and Settlement Agreement and Wittorf's ratification of it. On April 4, 1994, the district court granted the motion, dismissing all claims.

## STANDARD OF REVIEW

Review of a motion for summary judgment is plenary. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 79 (5th Cir.1987). Although review is *de novo,* we apply the same standards governing the district court's determination. *Jackson v. Federal Deposit Ins. Corp.,* 981 F.2d 730, 732 (5th Cir.1992). Summary judgment must be granted if the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

## RELEASE AND SETTLEMENT

Wittorf contends that the district court erred in basing its decision upon this Court's decisions in *Grillet v. Sears, Roebuck & Co.*[2] and *Wamsley v. Champlin Refining & Chemicals, Inc.*[3]. Specifically, he argues that because he continued to negotiate with Shell after the seven day period allowed for revoking his promise to release all claims against Shell, the rule of ratification and waiver espoused in *Grillet* and *Wamsley* should not be extended to this case.

Our review of the record reveals no error in the district court's findings. The Older Workers Benefit Protection Act ("OWBPA") contains very strenuous requirements that must be met for a waiver and release to be found knowing and voluntary. See 29 U.S.C. § 626(f)(1)(A)-(H). Neither party disputes that the OWBPA requirements were met. Wittorf was given more than the required

---

[2]927 F.2d 217 (5th Cir.1991).

[3]11 F.3d 534 (5th Cir.1993).

forty-five days to consider the Release and Settlement Agreement. The Agreement provided him with consideration he was not otherwise entitled to receive. It provided a seven day revocation period as required, of which Wittorf was made aware. Finally, Shell provided Wittorf with a list, by age and classification, of all individuals eligible and ineligible for participation in the special severance plan.

Even assuming that the Release and Settlement Agreement was defective because Shell continued to negotiate with Wittorf beyond the seven day revocation period, the Agreement became voidable and not void. *Wamsley,* 11 F.3d at 539. For that reason, we find that *Wamsley* is applicable in this case. A voidable waiver and release can still be enforced if it is ratified by the employee.

When Wittorf chose to retain and not tender back the enhanced severance benefits paid to him by Shell in consideration for his promise not to file claims against Shell, he manifested his intention to be bound by the Release and Settlement, thus making a new promise to abide by Shell's terms. *Id.* (citations omitted). It is that promise we can enforce. Therefore, we find that the district court did not err in find that not only did Wittorf knowingly and voluntarily sign the Release and Settlement Agreement, but also that he made an enforceable promise to abide by the Agreement when he accepted the enhanced severance benefits from Shell and did not return them.

## NON-EMPLOYEE SPOUSE'S COMMUNITY PROPERTY RIGHTS

Mrs. Wittorf contends that her vested property rights in her husband's severance benefits cannot be extinguished simply because her husband signed the Release and Settlement Agreement. She asserts that she did not sign the Agreement, did not ratify the Agreement, nor did she receive any consideration. As her husband's severance benefits are community property, she cannot waive her rights without participating in the Agreement. Therefore, because she did not sign or ratify the Release and Settlement Agreement, she cannot be held to have vicariously ratified it.

The Louisiana Supreme Court recognizes that because retirement benefits belong to the community, a wife has a right to share in those benefits. See *Eskine v. Eskine,* 518 So.2d 505, 507 (La.1988). Until the community is terminated, however, "either spouse may dispose of community property unless otherwise provided by law." *Keller v. Schilling,* 593 So.2d 926, 927 (La.App. 4 Cir., 1992).

Courts in Louisiana have chosen not to recognize a non-employee spouse's right to dictate how severance benefits are invested or paid. *Cutting v. Cutting,* 625 So.2d 1112, 1121 (La.App. 3 Cir., 1993), *writ denied,* 631 So.2d 453 (La.1994). "Only if and when the employee spouse decides to retire will the retirement benefits become payable." *Id.*

Because Mr. Wittorf was Shell's employee, and not Mrs. Wittorf, only he had the right to decide whether to accept Shell's offer to pay him enhanced severance benefits under the special severance plan in exchange for his early retirement. Accordingly, only he could sign the Release and Settlement Agreement. Therefore, we conclude that the district court did not err in finding that Mrs. Wittorf did not have a valid claim against Shell because she could not participate in the special severance plan offered to her husband by Shell.

## CONCLUSION

In accordance with the reasons articulated above, the judgment of the district court is AFFIRMED.