Dr. William **HODGE**, Plaintiff,

v.

The **NEW YORK COLLEGE OF PODIATRIC MEDICINE**, Defendant.

No. 95 Civ. 6959 (BSJ).

United States District Court, S.D. New York.

Sept. 17, 1996.

Clifford L. Davis, White Plains, NY, for plaintiff.

## *OPINION AND ORDER*

JONES, District Judge:

Plaintiff brought this action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* Before the Court is defendant's motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that plaintiff's claim is time-barred. For the reasons set forth below, defendant's motion is granted.

### Background [1]

Plaintiff was employed by defendant beginning in 1973 as an Assistant Professor and

1. On a motion to dismiss pursuant to Rule 12(b)(6), the facts in the complaint are taken as

became a Full Professor in the Department of Microbiology in 1977. From July 1979 until his termination in 1995, plaintiff was also the Chairman of the Microbiology Department. Plaintiff also held the position as the Chairman of the Division of Basic Sciences from July 1979 until July 1982. From July 1982 until July 1985, plaintiff was promoted to the position of Dean of the Division of Basic Sciences. In or about 1984, plaintiff also became the Director for Institutional Research and held that position up until his termination in 1995. At the time of his termination, plaintiff was 67 years old and receiving an annual compensation of $74,400.

On or about July 6, 1992, plaintiff entered into a two-year contract for a term beginning July 1, 1992 and terminating on June 30, 1994 (the "July 1992 contract"). This contract specifically provided that plaintiff's contract would be renewed at its termination subject to plaintiff's agreement and other factors. These factors include "the College's evaluation of your professional performance, the needs of the College and the Clinic, the availability of funds, and your compliance with the applicable credentialing standards." Compl. ¶ 13.

The July 1992 contract was consistent with defendant's Faculty Manual then in effect, which provided that professors who have two-year employment contracts must have those contracts renewed unless there is specific cause not to renew. The manual states that "[t]he burden of proof in establishing cause for dismissal or non-renewal of greater than one year contracts rests upon the College." The manual then lists eight reasons which constitute sufficient cause, including dishonesty in teaching, neglect in academic duties, personal conduct which impairs the individual's fulfillment of his College responsibilities, and falsification of credentials. The Manual also provides that a faculty member may appeal a determination made against him to the Hearing Committee of the Faculty Council.

Plaintiff received a review from defendant in or about February 1993 which revealed that plaintiff's performance was "exceed[ing] expectations." Notwithstanding plaintiff's excellent review, during the February 1993 meeting with plaintiff, Dr. Robert Bressler, Assistant Dean of the Division of Basic Sciences for defendant advised plaintiff that his salary was too high because of his many years of service, that he wanted to cut plaintiff's position and salary in half, and that his contract would not be renewed beyond June 30, 1995. Dr. Bressler further told plaintiff that with the salary that plaintiff was earning defendant could hire two faculty members. Dr. Bressler's position was memorialized in a letter dated February 10, 1993, which was not received by plaintiff until February 17, 1993. Because defendant was required to have cause in order not to renew plaintiff's contract,[2] plaintiff rejected defendant's proposal to reduce his duties and salary by one-half.

In response to plaintiff's rejection of that offer, defendant advised plaintiff in a letter dated March 3, 1993, that plaintiff's July 1992 contract would not be renewed. The letter does not state a reason for the non-renewal, nor was plaintiff orally advised of any reasons for the non-renewal.

On or about June 28, 1993, defendant announced that salary increases would become effective on July 1, 1993. Plaintiff had always received, at a minimum, a cost of living increase. Plaintiff alleges that although his colleagues received a cost of living increase adjustment, plaintiff did not.

On or about July 1, 1993, defendant submitted a new contract (the "July 1993 contract") to plaintiff which provided that plaintiff would be retained for one year after the 1994 expiration of the July 1992 contract, and that his services could be revoked at the will of defendant without the need to show cause. Believing that defendant was discriminating against plaintiff based on his age, plaintiff refused to sign the July 1993 contract.

true. *See, e.g., Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir.1994).

**2.** Indeed, plaintiff alleges that on February 18, 1993, Daniel Stack, defendant's counsel, advised

plaintiff that his July 1992 contract was valid and that defendant could elect not to renew the contract only if there was sufficient cause.

On or about August 31, 1993, Plaintiff sought relief from the Faculty Hearing Committee of the Faculty Council of defendant (the "Committee"), contending that he was being discriminated against based on his age. The Committee found that defendant failed to demonstrate any of the eight valid causes for non-renewal of a contract greater than one year as required by the Faculty Manual. The Committee also found that because the Credentials, Promotions and Standard Committee had never addressed whether plaintiff's contract should not be renewed, defendant had violated the Faculty Manual, and that it was improper not to renew plaintiff's contract. Moreover, the Committee noted that it had attempted to meet with Dr. Bressler, and he advised by personal communication that he was unable to speak to the Committee regarding this matter. The Committee ultimately concluded that "there was insufficient cause and inappropriate procedure followed with specific regard to the drafting of Dr. William Hodge's contract."

On or about September 1, 1993, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff met with Dr. Bressler and Dean Trepal on October 12, 1993, and October 20, 1993. Plaintiff alleges that they informed him that "if he did not sign the July 1993 contract that the situation for plaintiff would get nasty." According to the complaint, on both occasions, Dr. Bressler specifically told plaintiff that "if he did not sign that contract that cause could always be found to support a termination, such as by giving him a poor evaluation, stating that plaintiff was not bringing in enough grant money and the like."

During this time, defendant nevertheless recognized plaintiff's excellent performance. On March 12, 1993, a month after plaintiff had been advised of defendant's intention not to renew his contract, Associate Dean Michael J. Valleta sent plaintiff a congratulatory letter relating to an article plaintiff had published. This letter referred to plaintiff's "excellent work diligence and research [which] are truly reflected in [plaintiff's] article." Plaintiff was further honored by re-ceiving an award in May 1993 which is given annually to "the faculty member who has contributed most to the education and training of the Podiatric Doctor." Plaintiff received another excellent review in January 1994.

Plaintiff finally did enter an agreement with defendant in or about April 1, 1994 (the "Agreement") by which plaintiff would remain employed with defendant until June 30, 1995, and plaintiff agreed to withdraw his charge of discrimination with the EEOC. This contract, appended to the complaint as exhibit A, stated that "[y]ou [plaintiff] shall not have the option of extending your contract for any period of time whatsoever beyond June 30, 1995. This provision is acknowledged to obviate the need for any further notice to you during the period July 1, 1994 through June 30, 1995 of the College's intentions with respect to offering you the opportunity to extend or renew your contract."

Moreover, the contract explicitly stated that it was "expressly conditioned on your unconditionally dropping your currently pending complaint against the College that you have lodged" with the EEOC. It also required plaintiff to "inform said Commission by executing and delivering to it one witnessed copy of the appended letter of withdrawal."

Indeed, plaintiff withdrew his charge from the EEOC, and remained employed with defendant until June 30, 1995, at which time his contract was not renewed and he was terminated without cause. Plaintiff alleges that he was replaced in his position of Professor of Microbiology by a person under the age of 40.

## Discussion

### 1. Standard under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept as true the allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Bolt Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995) (citing *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762

(1993)). The court "should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotations omitted).

## 2. Filing Requirements under the ADEA

Plaintiffs who bring claims under the ADEA must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful practice occurred. *See* 29 U.S.C. § 626(d). In deferral states like New York, that time period is extended to 300 days. Moreover, plaintiffs may not bring a cause of action on that charge until 60 days after the filing of the charge with the EEOC. After 60 days have passed, plaintiffs may bring action in court, and may do so at any time, until 90 days after the termination of the EEOC proceedings.[3]

## 3. Analysis of Plaintiff's Claim

### a. ADEA Filing Requirements

The question of whether plaintiff timely filed a charge within the statutory time period of 300 days is essentially undisputed. The alleged unlawful act occurred on March 3, 1993, when defendant notified plaintiff of the non-renewal of his contract.[4] Plaintiff filed his claim with the EEOC in September 1993, well within the 300–day time period.

In April 1994, plaintiff requested that his EEOC claim be withdrawn, and the EEOC granted his request, thereby terminating the EEOC proceedings. Because plaintiff did not file this action until August 1995, well

past the 90 day period prescribed by the statute, plaintiff's claim is time-barred.[5]

### b. The Older Workers' Benefits Protection Act

■■■ Plaintiff argues that because he withdrew his EEOC charge pursuant to a waiver in the Agreement that was unknowing and involuntary as defined by the Older Workers' Benefits Protection Act ("OWBPA"), the termination of the EEOC charge was ineffective, and as such, the 90–day period has not yet begun to run. This argument could prevail only if the failure to comply with the OWBPA requirements rendered the April 1994 Agreement—and therefore the termination of the EEOC charge—void. This Court concludes, however, that the Agreement was merely voidable, not void, and therefore the termination of the EEOC charge was effective. Accordingly, the instant action is time-barred.

The OWBPA provides that "an individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f). The statute further provides eight items which must be included in order for a waiver to be "knowing and voluntary," including that the waiver be written in a manner calculated to be understood, that it specifically refer to rights or claims arising under the ADEA, and that the individual is advised in writing to consult with an attorney prior to executing the agreement. *See* 29 U.S.C. § 626(f)(1)(A), (B), and (E).

There is a clear split in the circuits as to whether a waiver which fails to meet the statutory requirements of OWBPA prevents a former employee from bringing action under the ADEA, and this Circuit has not yet

---

**3.** Indeed, section 626(d) states "[i]f a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section ... within 90 days after the date of the receipt of this notice." 29 U.S.C. 626(d).

**4.** *See, e.g., Shockley v. Vermont State Colleges,* 793 F.2d 478 (2d Cir.1986) (holding that notification

of non-reappointment is the unlawful act which begins the time period running).

**5.** Thus this Court need not address the issue of whether plaintiff may sue on an EEOC charge that has been withdrawn, because even if a plaintiff may sue on a withdrawn EEOC charge, the complaint is untimely. *See, e.g., Dalessandro v. Monk,* 864 F.2d 6, 8 (2d Cir.1988) (holding that "[o]nce a plaintiff settles a claim and withdraws it from the EEOC, he may not then sue on the same claim in federal court").

addressed this issue. The Fourth and the Fifth Circuits have held that failure to meet the OWBPA requirements renders a contract merely voidable and not void; thus, a plaintiff who performs under the contract and receives the benefits under that contract has ratified the waiver and is therefore barred from bringing action. *See Blistein v. St. John's College,* 74 F.3d 1459 (4th Cir.1996); *Blakeney v. Lomas Information Systems, Inc.,* 65 F.3d 482 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996); *Wittorf v. Shell Oil Co.,* 37 F.3d 1151 (5th Cir.1994); *Wamsley v. Champlin Refining and Chemicals, Inc.,* 11 F.3d 534 (5th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 1403, 131 L.Ed.2d 290 (1995). By contrast, the Seventh Circuit holds that failure to comply with the requirements in the OWBPA renders the contract legally void; a plaintiff in those circuits who enters such a waiver may bring a claim under the ADEA. *See Oberg v. Allied Van Lines, Inc.,* 11 F.3d 679, 683 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994).

In *Wamsley v. Champlin Refining and Chemicals, Inc.,* 11 F.3d 534 (5th Cir.1993), the Fifth Circuit considered the issue of whether any waiver failing to meet one of the requirements of the OWBPA is voidable—and capable of being ratified—or legally void. The Court stated that "[t]he doctrine of contractual ratification is the enforcement of a promise to perform all or part of an antecedent contract of the promisor, previously voidable by him, but not avoided prior to the making of the promise." *Id.* at 538 (citing Restatement (Second) of Contracts § 85 (1981)). In considering common law concepts of contract, the court further stated that "[a] contract is voidable if there exist grounds upon which a party can avoid, or disaffirm his duty of performance. Such grounds have traditionally included fraud, duress, mistake and infancy." *Id.* (citing Restatement (Second) of Contracts § 7, § 7 cmt.b).

The *Wamsley* court then examined the legislative history of the OWBPA and concluded that "the fundamental purpose of the OWBPA waiver provisions is to ensure that an older worker who is asked to sign an ADEA waiver does so in the absence of fraud, duress, coercion, or mistake of material facts. The circumstances against which these provisions were designed to protect are the same circumstances that have *traditionally* given rise to grounds upon which a party can avoid contractual obligations." *Id.* at 539 n. 8 (citing S.Rep. No. 101–263, 101st Cong., 2nd Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 1509, 1537) (emphasis added). In addition, the *Wamsley* court considered significant the absence of any language in the statute or in the legislative history which indicates that a waiver which fails to comply with OWBPA is void of legal effect and cannot be ratified by an employee. *See id.*

The rule established in *Wamsley* was subsequently followed by the Fifth Circuit in *Blakeney v. Lomas Information Systems, Inc.,* 65 F.3d 482 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996) and *Wittorf v. Shell Oil Co.,* 37 F.3d 1151 (5th Cir.1994), and by the Fourth Circuit in *Blistein v. St. John's College,* 74 F.3d 1459 (4th Cir.1996). In *Blistein,* the Court of Appeals for the Fourth Circuit concluded that "an employee who unknowingly and involuntarily enters into a retirement agreement ... has a voidable, not a void, contract, much like a party who enters into a contract under duress has a voidable rather than a void, contract. Upon learning that the agreement is voidable, the employee, like the party who acted under duress, can either avoid performance of the contract or accept its benefits and thereby ratify the contract." *Blistein,* 74 F.3d at 1466.

By contrast, the Court of Appeals for the Seventh Circuit considered the issue of whether a waiver that fails to meet the requirements of OWBPA can nevertheless act as a bar to bringing suit. The court stated that "the statute's operative words carry the plain meaning within their context.... No matter how many times parties may try to ratify such a contract, the language of the OWBPA, '[a]n individual may not waive,' forbids any waiver." *Oberg v. Allied Van Lines, Inc.,* 11 F.3d 679, 683 (7th Cir.1993) (citing *Forbus v. Sears, Roebuck & Co.,* 958 F.2d 1036 (11th Cir.), *cert. denied,* 506 U.S.

584

955, 113 S.Ct. 412, 121 L.Ed.2d 336 (1992)). Thus, the court concluded that plaintiffs could not ratify the agreements at issue by retaining the consideration that they received. *Id.*

 After considering the legislative history of the OWBPA and the common law principles of contract and ratification, this Court follows the rationale and rule of *Wamsley.* An agreement that fails to meet the requirements of the OWBPA is merely voidable and not void, and thus can be ratified by accepting the benefits conferred by the agreement. The opposite rule—that a contract is legally void when it fails to meet one of the OWBPA requirements—would allow plaintiffs "to have it 'both ways,' to retain the benefits that they receive pursuant to their retirement agreements, yet to challenge, through suits against their unsuspecting employers, the very agreements under which those benefits were extended." *Blistein,* 74 F.3d at 1466.

In the instant case, the parties do not dispute that the April 1994 Agreement does not meet the requirements of the OWBPA. Moreover, plaintiff alleges that he entered the April 1994 Agreement under "intimidation" by defendant. The complaint is silent, however, as to when plaintiff discovered that the contract failed to meet the requirements of the OWBPA, although it is undisputed that plaintiff accepted the consideration of employment for one year through July 1995 in return for withdrawing his claim with the EEOC.

Not only has plaintiff accepted the benefits of the contract, but there is no way for plaintiff or defendant to tender back the consideration exchanged. Plaintiff can not now claim, after full completion of the contract, that he entered it involuntarily. Rather, plaintiff's full performance and acceptance of the consideration constitutes a ratification of the contract.

### Conclusion

Plaintiff's claim is time-barred because more than 90 days have passed since the date of termination. This termination is effective despite the fact that the charge was withdrawn pursuant to a contract that failed to comply with the requirements of OWBPA, because plaintiff completed and therefore ratified the contract. Defendant's motion to dismiss plaintiff's claim for failure to state a claim is hereby granted.

**So ordered.**